UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JESUS BORJA, on behalf of himself, FLSA          :
Collective Plaintiffs and the Class,             :
                                                 :
                           Plaintiff,            :     **REPORT & RECOMMENDATION**
                                                 :
            -against-                            :        22 Civ. 6178 (EK) (VMS)
                                                 :
MSK RESTAURANT CORP d/b/a                         :
YANGSANDO, and KEUM SOON PARK,                    :
                                                 :
                           Defendants.           :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Jesus Borja ("Mr. Borja" or "Plaintiff"), on behalf of himself and others

similarly situated, filed this action against Defendants MSK Restaurant Corp d/b/a Yangsando

("MSK" or the "Corporate Defendant") and Keum Soon Park ("Ms. Park" or the "Individual

Defendant") (collectively, "Defendants") for alleged violations of the Fair Labor Standards Act,

29 U.S.C. §§ 201 et seq. (the "FLSA") and the New York Labor Law, N.Y. Lab. L. §§ 190 et

seq.; 650 et seq., and the corresponding New York regulations (the "NYLL"). See Compl., ECF

No. 1. Before the Court is Plaintiff's motion for default judgment.

For the following reasons, the undersigned respectfully recommends that Plaintiff's

motion as to liability be granted in part, denied in part with prejudice, and denied in part without

prejudice; that Plaintiff's motion be denied without prejudice as to damages; that Defendants be

found liable to Plaintiff for violations of the FLSA and NYLL as described herein; and that

Plaintiff be permitted to file a new motion as to damages within 30 days of the adoption of this

report and recommendation, should it be adopted.

The Court also respectfully recommends that Plaintiff's motion as to his time-shaving

claim and wage-notice and wage-statement claims be denied, that Plaintiff's time-shaving claim

1

be dismissed with prejudice because it was abandoned, and that Plaintiff's wage-notice and wage-statement claims be dismissed without prejudice for lack of standing.

## I.    BACKGROUND

The following facts are derived from the complaint and Plaintiff's declaration in support of his motion for default judgment at ECF No. 30.  In light of Defendants' failure to challenge Plaintiffs' allegations by participating in this lawsuit, the Court will accept all factual allegations in the complaint as true for the purposes of this motion.  See Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 234-35 (E.D.N.Y. 2024) (collecting cases).

### A.    Factual Background

At all times relevant to this action, Defendant MSK was a restaurant located in Queens County, New York.  See Compl. ¶ 6.  Ms. Park was a principal of MSK, with "operational control" over the restaurant.  Id. ¶ 8.  Ms. Park had the power to hire and fire employees; set employee work schedules; determine the rate and method of employees' compensation; and maintain employment records.  See id.

"In or around August 2020," Defendants hired Plaintiff to work as a busboy at MSK.  Id. ¶ 26.  While Plaintiff was employed by Defendants, Plaintiff's duties included "bussing tables; dishwashing; accepting/unloading deliveries; organizing deliveries; sweeping/mopping; and cleaning the restaurant."  Id. ¶ 27.[1]  Plaintiff's employment with Defendants ended "in or around October 2021."  Id. ¶ 26.

---

[1] Plaintiff does not explain how he was engaged in bussing tables during the first year of the Covid-19 pandemic, when certain restaurant dining in New York City was limited by government order.  As Defendants have failed to appear and contest Plaintiff's allegations, the Court accepts Plaintiff's statements as true.

Throughout his employment, Plaintiff was regularly scheduled to work six days per week from 10:30 A.M. to 10:30 P.M.  See id. ¶ 28.  Plaintiff "regularly" worked more than ten hours in a single day.  See id. ¶ 33.  Although Plaintiff was supposed to be given a one-hour meal break, Plaintiff was "interrupted and required to work through his meal breaks on a daily basis." Id. ¶ 31.  In total, Plaintiff worked 72 hours per week.  See id. ¶ 28.

Plaintiff received a flat weekly salary throughout his employment, regardless of the number of hours he worked per week.  See id. ¶ 29.  From "the start of his employment until in or around July 2021," Plaintiff earned $700.00 per week.  Id.  "From in or around July 2021 until the end of his employment," Plaintiff earned $750.00 per week.  Id.  Plaintiff never received any overtime premiums for the hours that he worked above forty hours per week.  See id. ¶ 30. Plaintiff also did not receive wage notices or wage statements when he was hired, or thereafter. See id. ¶¶ 34-35.

**B.    Procedural History**

Plaintiff filed this action as a putative class and collective action on October 13, 2022. See ECF No. 1.  Within two weeks, the Court issued a scheduling order directing the parties to engage in certain discovery and informal settlement discussions.  See ECF No. 8.  On October 19, 2022, pursuant to N.Y. Bus. Corp. L. § 306, service of process on MSK was effectuated via personal service on an agent of the New York Secretary of State.  See ECF No. 9.  On October 31, 2022, Ms. Park was personally served with the summons and complaint.  See ECF No. 10. After the Court raised concerns about whether service of process was properly effectuated, see 12/29/2022 Order, Plaintiff submitted amended affidavits of service.  See ECF Nos. 11 (service of process on MSK); 12 (service of process on Ms. Park).  The Court ordered Plaintiff to file a status report detailing his efforts to serve Defendants, and Defendants to answer or otherwise

3

respond to the complaint on or before January 20, 2023.  See 12/29/2022 Order.  Plaintiff filed a status letter on February 2, 2023, explaining that Ms. Park had been personally served, that MSK had been served through the New York Secretary of State, and that Defendants had not yet contacted Plaintiff.  See ECF No. 17.

When Defendants missed their deadlines to answer, Plaintiff filed a request for a certificate of default.  See ECF No. 13.  The Clerk of Court issued a certificate of default as to both Defendants on January 27, 2023.  See ECF No. 15.  The Court scheduled a telephone conference to discuss Defendants' failure to appear in the case.  See ECF No. 16.  In this scheduling Order, the Court warned Defendants that "[if they] continue to fail to participate [in this action] the Court may grant Plaintiff's request and enter default judgment against [them]." Id. at 1.  The Court mailed a copy of this scheduling Order, the complaint, and the docket sheet to Defendants' known mailing addresses and ordered Plaintiff to do the same.  See 1/27/2023 Order.  Plaintiff complied with the Court's Order.  See ECF No. 17.

Defendants failed to appear for the February 22, 2023, conference.  See 2/27/2023 Minute Entry.  Following the conference, the Court ordered Plaintiff to file a letter with information from the New York Secretary of State regarding service on the Corporate Defendant. See 2/27/2023 Order.  The Court ordered Plaintiff to make a proposal as to how this action should proceed if Defendants failed to respond to the complaint by the time Plaintiff filed this letter.  See id.  On March 31, 2023, Plaintiff filed a letter informing the Court as to Plaintiff's numerous "good faith" attempts to contact the Secretary of State, with no answer.  See ECF Nos. 20; 20-1.  This letter also explained that Plaintiff telephoned Ms. Park "but has not been able to reach her."  ECF No. 20.  Following the filing of this letter, the Court permitted Plaintiff to move for a default judgment.  See 5/31/2023 Order.

4

Plaintiff filed his initial motion for a default judgment on June 1, 2023, which the District Court referred to the undersigned for a report and recommendation.  See ECF Nos. 21-23; 6/2/2023 Order.  After this motion was filed, the Court scheduled an additional conference for August 15, 2023, in an effort to have Defendants appear.  See 7/10/2023 Order.  In the Order scheduling the August 15, 2023, conference, the Court warned Defendants that

> [b]ecause Defendants have not responded to this lawsuit by answering the complaint or moving to dismiss it, the Court may award damages against Defendants and in favor of Plaintiff for thousands of dollars, for which Defendants would be liable.  If Defendants do not participate in the lawsuit now, they would likely waive their right to raise factual or legal defenses that they may have to Plaintiff's claims.

Id.  The Court also directed Plaintiff to file proof of service of this Order and of the docket on Defendants.  See id.  Plaintiff complied with the Court's Order.  See ECF No. 25.  After Defendants did not appear at the conference on August 15, 2023, the Court entered the following Order:

> Despite multiple attempts at contacting Defendants, they have not appeared in this case and did not attend the 8/15/2023 Default Conference. The Court will review and address the motion for default judgment at [ECF No. 21].  The Court will notify Plaintiff if any further filings or conferences are required. If Defendants contact Plaintiff, Plaintiff must inform the Court in writing.

8/15/2023 Order.  The Court mailed a copy of this Order to each Defendant; the mailing to MSK was returned as "undeliverable."  See ECF No. 27.

After reviewing Plaintiff's initial default judgment motion, the Court scheduled a conference to discuss Plaintiff's motion, as the Court "identified certain issues that require additional explanation or legal analysis." 2/21/2024 Order.  During the conference, Plaintiff's counsel stated his intention to request a default judgment with the Clerk of Court, pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(1).  See ECF No. 33 2:9-10.  Plaintiff's counsel also said that in response to the Court's questions, he would re-submit his computation of

damages, in accordance with New York's Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146 <u>et seq.</u>  <u>See</u> ECF No. 33 2:23-3:2.  Plaintiff withdrew his motion for default judgment without prejudice; the Court ordered Plaintiff to file a default judgment motion. <u>See</u> 2/27/2024 Order.

Plaintiff filed an amended motion for default judgment, pursuant to Rule 55(b)(1).  <u>See</u> ECF Nos. 28-31.  The District Court referred Plaintiff's renewed motion to the undersigned for a report and recommendation.

Plaintiff brings claims against Defendants for failure to pay overtime premiums under the FLSA and NYLL, unlawful time-shaving practices under the FLSA and NYLL, unlawfully retained tips under the FLSA and the NYLL, failure to pay spread-of-hours premiums under the NYLL, failure to provide wage-notices under the NYLL, and failure to provide wage-statements under the NYLL.  <u>See</u> Compl. ¶¶ 41-61.  Although Plaintiff originally filed this action as a putative class and collective action, <u>see id.</u> ¶¶ 14-25, Plaintiff "seeks default judgment only on his own behalf, and not on behalf of any putative class members."  Pl.'s Mem. L. at 2, ECF No. 31; <u>see</u> Lee Aff. ¶ 16, ECF No. 29.

## II.    LEGAL STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure ("Rule") 55 "provides a two-step process for obtaining a default judgment."  <u>Priestley v. Headminder, Inc.</u>, 647 F.3d 497, 504 (2d Cir. 2011).  In the first step, upon a showing, "by affidavit or otherwise," that the party against whom default judgment is sought "has failed to plead or otherwise defend" the action, then "the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once the clerk has entered a default, then, at the plaintiff's request, the clerk must enter default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation[.]"  Fed. R. Civ. P. 55(b)(1).  If the

calculation of damages requires any level of discretion, the plaintiff may petition the court for a default judgment.  See Fed. R. Civ. P. 55(b)(2).

"The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993); see Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011).  Nevertheless, a court may not enter default judgment "in a manner inconsistent with due process of law."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 132 (2d Cir. 2011) (citation omitted); see Enron, 10 F.3d at 96 (observing that "procedural rules" governing default judgments "play a constructive role in maintaining the orderly and efficient administration of justice").  A court facing a default judgment motion must ensure both that "a plaintiff satisfied all required procedural steps in moving for default judgment," and that "a plaintiff's allegations, when accepted as true, establish liability as a matter of law[.]"  Jiao v. Shang Shang Qian Inc., No. 18 Civ. 5624 (ARR) (VMS), 2020 WL 6370148, at *6 (E.D.N.Y. Aug. 11, 2020), report & recommendation adopted, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020).  Once a defendant has defaulted, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]"  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (noting that the court must still independently determine "whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law").

Not every claim in a complaint will lead to an award of damages, even if the defendants have defaulted.  If a plaintiff raises a claim in a complaint but fails to mention it in the ensuing default judgment motion, a court may consider that claim abandoned.  See Duan v. Studio M Bar

7

& Lounge Inc., No. 20 Civ. 2240 (RPK) (JRC), 2024 WL 4250262, at *3 n.8 (E.D.N.Y. Jan. 31, 2024) (considering FLSA and NYLL retaliation claims abandoned when the plaintiffs "alleged retaliation claims under the NYLL and FLSA [in the amended complaint], but failed to mention these claims in their motion for default judgment"); Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 121 (E.D.N.Y. 2023) (finding that the plaintiffs abandoned their claim for unlawful deductions and kickbacks in their complaint when they did "not elaborate on, or even mention, these deductions in their supporting memorandum or affidavits, nor [did] they appear to have included them in their damages computation").

Furthermore, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The court "must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). A plaintiff's damages must "naturally flow from the injuries pleaded." Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) (quoting Greyhound, 973 F.2d at 159).

## III.    DISCUSSION

As a preliminary matter, although Plaintiff moved for default judgment pursuant to Rule 55(b)(1), the Court finds that Rule 55(b)(2) governs this motion. Rule 55(b)(1), in which the clerk of court enters default judgment "against a defendant who has defaulted for not appearing and who is neither a minor nr an incompetent person," only applies if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). A claim does not become sum certain, however, "merely because the complaint or affidavit

identifies a purported total." <u>Alexandru v. Brown</u>, No. 11 Civ. 2157 (CBA) (LB), 2012 WL 2319246, at *4 (E.D.N.Y. Feb. 16, 2012), <u>report & recommendation adopted</u>, 2012 WL 2320792 (E.D.N.Y. June 19, 2012) (citations omitted). Rather, if the plaintiff only makes "general allegations of damages," the plaintiff must follow the procedures set forth in Rule 55(b)(2). <u>Id.</u>; <u>see</u> <u>Tene v. Neuehaus Studios Inc.</u>, No. 23 Civ. 2040 (NRM) (MMH), 2024 WL 1270816, at *2 (E.D.N.Y. Mar. 26, 2024) (treating a Rule 55(b)(1) request as a Rule 55(b)(2) motion because "the Complaint does not allege a sum certain, and the motion papers do not include affidavits from fact witnesses . . . to support the requested damages").

Plaintiff's complaint does not allege damages in a sum certain. The complaint only contains general allegations about the time period in which Plaintiff worked, namely that he worked from "[i]n or around August 2020" to "in or around October 2021." Compl. ¶ 26. As Plaintiff makes only vague allegations about the period of Defendants' purported liability, there is no way to determine the exact number of weeks for which Defendants would owe Plaintiff damages. The complaint also alleges that Plaintiff's weekly compensation changed "in or around July 2021," but does not specify exactly when this change occurred. <u>Id.</u> ¶ 29. As Plaintiff alleges violations of overtime laws, a change in compensation may result in a change in damages during the second part of Plaintiff's employment. <u>See id.</u> ¶¶ 45, 56. Without a more specific date in which Plaintiff's compensation changed, the Court cannot determine the boundaries of each of Plaintiff's employment periods. Plaintiff also alleges that Defendants unlawfully retained tips, but the complaint only gives a monetary range of tips that Defendants allegedly retained. <u>See id.</u> ¶ 32. These allegations are general allegations of damages, which cannot "be made certain by computation," Fed. R. Civ. P. 55(b)(1), such that the Court must consider the motion under Rule 55(b)(2).

Furthermore, although Plaintiff submitted a declaration and calculation of damages in support of his default judgment request, these materials also do not support a calculation of sum certain damages. Plaintiff's declaration mirrors the general language in the complaint. <u>See</u> Borja Decl. ¶¶ 3, 6, 8, ECF No. 30. Plaintiff's damages calculation offers start dates and end dates for Plaintiff's employment periods, and gives an average of tips retained per day, but it does not offer information to support the specificity as to the proposed start and end of Plaintiff's damages. <u>See</u> Lee Aff. Ex. E, ECF No. 29-5. As Plaintiff does not offer supporting materials that may lead to a calculation of a sum certain of damages, the Court must analyze Plaintiff's motion under Rule 55(b)(2). <u>See</u> <u>Tene</u>, 2024 WL 1270816, at *2.

## A.    Plaintiff's Compliance With Procedural Rules

In evaluating a motion for default judgment, a court "should consider whether Plaintiffs have shown that Defendants had notice about the action and an opportunity to defend against it." <u>Fermin</u>, 93 F. Supp. 3d at 30. Generally, a "motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." <u>Jimenez</u>, 744 F. Supp. 3d at 241-42 (citations omitted). Before default judgment can be granted, the Court must determine whether Plaintiffs complied with the Federal Rules of Civil Procedure, the Local Civil Rules of the Southern and Eastern Districts of New York, and the Servicemembers Civil Relief Act.

### 1.    Federal Rule Of Civil Procedure 4

Under the Federal Rules of Civil Procedure, service on a either an individual or a corporate entity is valid if, <u>inter</u> <u>alia</u>, it complies with "state law for serving a summons in an action . . . in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A). As this action was commenced in the Eastern District of New York,

service of process complies with the Federal Rules if it is permissible under either the Federal Rules or New York law.

Plaintiff properly effectuated service of process on MSK.  New York law permits service of process on a corporation by

> [p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement.

N.Y. Bus. Corp. L. § 306(b)(1)(i).  Plaintiffs' process server personally delivered a copy of the summons and complaint to Nancy Dougherty, an agent of the Secretary of State, at the Secretary's office in Albany.  See ECF No. 11.  Plaintiff later called the Secretary of State's office to confirm that MSK had been properly served under New York law.  See ECF No. 17. Plaintiff also mailed the docket sheet in this action, summons and complaint to MSK's business address, in response to Orders from the Court.  See ECF Nos. 18; 25.

Plaintiff also properly effectuated service of process on Ms. Park.  Under the Federal Rules, an individual may be served by "delivering a copy of the summons and complaint to the individual personally[.]"  Fed. R. Civ. P. 4(e)(2)(A).  Here, Plaintiff's process server personally delivered the summons and complaint to Ms. Park.  See ECF No. 12.  Plaintiff's counsel also repeatedly tried to reach Ms. Park through other means, including calling her over the telephone. See ECF No. 20.  Pursuant to Orders from the Court, Plaintiff mailed the docket sheet in this action, summons and complaint to Ms. Park's home address.  See ECF Nos. 18; 25.

As Plaintiff has properly served Defendants in accordance with Rule 4 and provided additional mailings after service, Defendants were served and are deemed on notice of the present action.

## 2. Local Civil Rule 55.2[2]

In addition to effectuating proper service on under the Federal Rules, a movant for default judgment must also comply with the Local Civil Rules of the Southern and Eastern Districts of New York (the "Local Civil Rules"). Courts within this District generally require strict compliance with the Local Rules "[a]bsent special circumstances." Dacas v. Duhaney, No. 17 Civ. 3568 (EK) (VMS), 2023 WL 6297530, at *6 (E.D.N.Y. Sept. 8. 2023), report & recommendation adopted, 2023 WL 6294227 (E.D.N.Y. Sept. 27, 2023). In many cases, "failure to comply with [Local Civil Rule 55.2] is a basis to deny a motion for default judgment." Zabrodin, 702 F. Supp. 3d at 116. Nevertheless, courts have excused a plaintiff's minor violations of Local Civil Rule 55.2, if the "complaint and default judgment papers provide sufficient notice of the relief sought as part of the motion for default judgment," and if the noncompliance "does not prejudice [the defendants]." Jiao, 2020 WL 6370148, at *7; see Zabrodin, 702 F. Supp. 3d at 117.

Under Local Civil Rule 55.2, the moving party in a default judgment motion must file "(1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civ. R. 55.2(b). The moving party must also mail all required moving papers "to the party against whom a default judgment is

---

[2] Local Civil Rule 1.1 provides that "[t]hese Local Civil Rules take effect on January 2, 2025 (the 'Effective Date') and govern actions pending or filed on or after that date. For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on January 1, 2025 will govern." The Court notes a gap in the Rule, in relation to which version of the Local Civil Rules applies to motions filed when one version of the Local Civil Rules was in effect but the motion was decided after a subsequent version of the Local Civil Rules came into effect, as here. The Court addresses this gap by applying the version of the Local Civil Rules in effect at the time this motion was filed in considering the motion, as these were the only Rules of which Plaintiff had notice at the time of filing.

sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)."  Local Civ. R. 55.2(c).

Here, the Court finds that the requirements of Local Civil Rule 55.2 have been met. Plaintiff's counsel submitted a declaration, with the complaint, a proposed judgment and the Clerk of Court's certificate of default against MSK and Ms. Park as exhibits.  See Lee Aff. Ex. A, ECF No. 29-1; Lee Aff. Ex. D, ECF No. 29-4; Lee Aff. Ex. G, ECF No. 29-7.  Plaintiffs' counsel also submitted an itemized damages calculation, as a basis for the damages listed in the proposed judgment.  See Lee Aff. Ex. E.

In compliance with Local Civil Rule 55.2(c), Plaintiff's counsel filed a certificate of service stating that Plaintiff's notice of motion for default judgment, Plaintiff's memorandum of law in support of his motion for default judgment, Plaintiff's declaration, and Plaintiff's counsel's declaration with all the accompanying exhibits, and mailed them to MSK's business address and to Ms. Park's last known address.  See ECF No. 32.  The complaint, the proposed judgment, and the Clerk of Court's certificates of default are included as exhibits to Plaintiffs' counsel's declaration.  See id.; ECF No. 29.

### 3.    Servicemembers Civil Relief Act

In any civil action "in which the defendant does not make an appearance[,]" the court must ensure that the plaintiff has complied with the Servicemembers Civil Relief Act ("SCRA") before entering a default judgment.  50 U.S.C. § 3931.  In order to comply with the SCRA, the plaintiff moving for default judgment must file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]"  50 U.S.C. § 3931(b)(1)(A).  In order to affirm that a defendant was not in military service, the plaintiff must conduct an investigation both "after the commencement of an action or proceeding" and "after a

default in appearance[.]" Tenemaza v. Eagle Masonry Corp., No. 20 Civ. 452 (AMD) (VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (quoting Pruco Life Ins. Co. of New Jersey v. Est. of Locker, No. 12 Civ. 882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)).

Plaintiff complied with the SCRA. Plaintiff's process server, upon delivering the summons and complaint to Ms. Park, asked her whether she was "presently in the military service of the United States Government or on active duty in the military service of the State of New York or a [dependent of] anybody in the military," to which Ms. Park answered in the negative. ECF No. 12. In his motion papers, Plaintiff's counsel declared that Ms. Park was not in military service and attached as an exhibit, reports from the Department of Defense Manpower Data Center stating that Ms. Park was not in military service. See Lee Aff. ¶ 18; Lee Aff. Ex. F, ECF No. 29-6. The Court finds that this is sufficient evidence of an investigation into Ms. Parks' military status, both when this action was commenced and after default was entered.

Given that Defendants were served, Plaintiff has substantially complied with Local Civil Rule 55.2, and Plaintiff has complied with the the SCRA, the Court finds that Plaintiff's default judgment motion is procedurally valid.

### B.    Factors Required For A Default Judgment

Once a court establishes that service on the defendants was proper, the "next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant entry of a default judgment." Melo v. Milagro Grocery Corp., No. 21 Civ. 4438 (PKC) (SJB), 2024 WL 4250267, at *6 (E.D.N.Y. Sept. 26, 2024). In order to determine whether default judgment is warranted, courts consider "(1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has

14

presented a meritorious defense." Fermin, 93 F. Supp. 3d at 30-31 (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)).

The Court finds that the first factor in evaluating a default judgment is satisfied. A "defendant's failure to respond to the complaint is sufficient to demonstrate willfulness." Fermin, 93, F. Supp. 3d at 31 (collecting cases). Defendants have "failed to plead or otherwise defend" this action. Fed. R. Civ. P. 55(a). After Plaintiff served the summons and complaint on Defendants, see ECF Nos. 9-10, the Court ordered Defendants to answer or otherwise respond on or before January 20, 2023. See 12/29/2022 Order. When Defendants did not answer, the Court gave Defendants another opportunity to participate in this action by scheduling a default conference, and warning Defendants that "[i]f Defendants do not participate in the lawsuit now, they would likely waive their right to raise factual or legal defenses that they may have to Plaintiff's claims." 1/27/2023 Order. The Court and Plaintiff both mailed a notice of this conference to Defendants. See id.; ECF No. 18. The Court scheduled another default conference after Plaintiff moved for default judgment, warning Defendants once more of the consequences of not participating in this litigation. See 7/10/2023 Order. Both the Court and Plaintiff mailed this scheduling Order, along with the complaint, to Defendants. See id.; ECF No. 25. Defendants did not appear in this case following any of the Court's or Plaintiff's outreach attempts. See 8/15/2023 Order. Despite these mailings, Defendants have failed to participate in this action and to raise defenses to Plaintiff's complaints. The Court finds that Defendants' default is willful.

The second requirement of a default judgment is also satisfied. A plaintiff may suffer prejudice upon the denial of a default judgment motion if no other options are available for the plaintiff to obtain relief. See Fermin, 93 F. Supp. 3d at 31. Such is the case for Plaintiff in this

action.  This action was originally filed on October 13, 2022; in the two years since this action was filed, Defendants have not answered or appeared.  Plaintiff and the Court have repeatedly endeavored to contact Defendants so that they might participate in this case, to no avail.  The Court finds that if default judgment is denied, Plaintiffs will not have other options to obtain relief from Defendants, and they will suffer prejudice accordingly.

Defendants cannot establish a meritorious defense in this action.  When a defendant has not answered a complaint, the defendant has no defense, let alone a meritorious one.  See id.; Pich v. Queens Garden Nursery Inc., No. 22 Civ. 3362 (MKB) (MMH), 2024 WL 687234, at *4 (E.D.N.Y. Feb. 20, 2024), report & recommendation adopted, 2024 WL 967636 (E.D.N.Y. Mar. 6, 2024).  As the Court already warned, Defendants' failure "to participate in this lawsuit . . . waive[d] their right to raise factual or legal defenses that they may have to Plaintiffs' claims." 1/27/2023 Order; 7/10/2023 Order.  Defendants failed to participate in this lawsuit, so they have no meritorious defenses.

The Court finds that all three factors necessary for a default judgment have been met for this case.  Therefore, the Court will analyze whether Defendants are liable to Plaintiffs for violations of the FLSA and the NYLL based on the allegations in the complaint.

**C.    Liability**

In order to determine whether a defendant in default is liable for a plaintiff's claims, "a court may accept all well-pleaded allegations in the unanswered complaint as true but must still satisfy itself that the plaintiff has established a sound legal basis on which liability may be imposed."  Santillan v. Henao, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011).  The Court will examine whether, accepting Plaintiff's well-pled allegations as true, Plaintiff is protected under

the FLSA and the NYLL, followed by whether Defendants are liable for wage-and-hour violations under the FLSA and NYLL.

### 1.    Applicability Of The FLSA

In order to establish liability under the FLSA, a plaintiff must prove "(1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of [the] FLSA; and (3) the employment relationship is not exempted from [the] FLSA."[3]  Payamps v. M&M Convenience Deli & Grocery Corp., No. 16 Civ. 4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (citation & internal ellipses omitted); see Isett v. Aetna Life Ins. Co., 947 F.3d 122, 127-28 (2d Cir. 2020) (noting that the FLSA "excludes certain classes of employees from its overtime-pay requirement"); Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 66 (2d Cir. 2003); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  In addition, in order to qualify for the FLSA's overtime protections, a plaintiff must show either that the employees are "engaged in commerce," or that the employer is an "enterprise engaged in commerce[.]"  Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96-97 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1) (emphasis removed)); Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 366-67 (E.D.N.Y. 2022).

### a.    Statute Of Limitations

Although the FLSA statute of limitations is normally two years, the limitations period may be extended to three years for "a cause of action arising out of a willful violation[.]"  29 U.S.C. §255(a).  In a motion for default judgment, a court will apply the three-year statute of

---

[3] There are other formations of liability under the FLSA; this formation is applicable in this case. See, e.g., 29 U.S.C. §§ 201 et seq.

limitations if the plaintiff alleges that the defendant's actions were "knowing and willful." <u>Dacas</u>, 2023 WL 6297530, at *6.

In this action, the three-year FLSA limitations period applies.  Plaintiff alleges that Defendants "knowingly and willfully failed to pay Plaintiff the proper overtime premium rate of time and one half of regular hourly rate for each hour exceeding forty (40) hours per workweek[,]" "knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper overtime due to an improper fixed salary and time shaving" and "showed a willful disregard for the provisions of the FLSA by illegally retraining all gratuities through its owner."  Compl. ¶¶ 30, 36, 46.  As such, because Plaintiff filed his complaint on October 13, 2022, the limitations period for Plaintiff's FLSA claims began October 13, 2019.  <u>See</u> ECF No. 1.

Plaintiff began working for Defendants "[i]n or around October 2020," making all his claims timely under the FLSA.  <u>See</u> Compl. ¶ 26.

### b.    Defendants' Engagement In Interstate Commerce

The FLSA limits the scope of its wage-and-hour protections to plaintiffs who are engaged in interstate commerce.  <u>See</u> <u>Jacobs</u>, 577 F.3d at 96 (quoting 29 U.S.C. § 207(a)(1)).  A plaintiff may satisfy the "engaged in commerce" requirement of the FLSA by establishing either that the plaintiff employee "personally engaged in interstate commerce or in the production of goods for interstate commerce," or that the defendant employer was "an enterprise engaged in interstate commerce or in the production of goods for interstate commerce."  <u>Rodriguez</u>, 784 F. Supp. 2d at 120.  These types of coverage are respectively known as "individual coverage" and "enterprise coverage."  <u>See</u> <u>id.</u>

As is relevant in this case, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as a business that, inter alia, "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person[,]" and has an "annual gross volume of sales made or business done [of] not less than $500,000."  29 U.S.C. § 203(s)(1)(A).

On a motion for default judgment, a plaintiff's otherwise conclusory allegations in the complaint may establish enterprise FLSA coverage if "it may be inferred from the type of business enterprise that it was engaged in interstate commerce."  Cabrera v. Canela, 412 F. Supp. 3d 167, 179-80 (E.D.N.Y. 2019) (collecting cases).  Even if the complaint "restates [the] statutory definition [of enterprise coverage] without providing any additional facts[,]" a court may reasonably infer that "the myriad goods necessary to operate a . . . restaurant with . . . over $500,000.00 in annual sales do not exclusively come from New York State."  Fermin, 93 F. Supp. 3d at 33 (inferring that a restaurant-defendant "requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more"); see Chavez v. Roosevelt Tropical Corp., No. 23 Civ. 2413 (EK) (PK), 2024 WL 4244087, at *5 (E.D.N.Y. Aug. 21, 2024), report & recommendation adopted, 2024 WL 4242218 (E.D.N.Y. Sept. 18, 2024) (finding that allegations that a restaurant "earned at least $500,000 in annual revenue" and "is an employer engaged in interstate commerce and/or in the production of goods for interstate commerce" established enterprise coverage, even without "additional facts"); Tambriz v. Taste & Sabor LLC, 577 F. Supp. 3d 314, 323 n.9 (S.D.N.Y. 2021) (finding that enterprise coverage under the FLSA may reasonably be inferred, given "the remedial nature of the FLSA and NYLL," even though "Plaintiffs' assertions about

19

interstate commerce are largely conclusory"); Rodriguez, 784 F. Supp. 2d at 121 (noting that "it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce"). A court may also infer that a busboy at a restaurant "handle[s] goods or materials that have moved in interstate commerce" while at work. Galicia v. 63-68 Diner Corp., No. 13 Civ. 3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30 2015); see Chavez, 2024 WL 4244087, at *5 ("It is reasonable to infer that a restaurant worker engaged in food service tasks handled tools and materials that were moved or produced in interstate commerce."). In other words, a plaintiff's bar to establish enterprise commerce in the complaint is low.

Here, the Court finds that enterprise coverage has been sufficiently established. The complaint alleges that MSK, throughout this litigation, "had gross annual revenue in excess of $500,000." Compl. ¶ 44. Furthermore, Defendants "were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a)." Id. ¶ 42. Although these allegations are conclusory, the Court will infer that MSK, as a sushi restaurant, imported at least some of the many goods necessary to operate a restaurant, such as food, cleaning supplies, furniture, utensils and kitchen equipment, from outside New York. See id. ¶ 6; Fermin, 93 F. Supp. 3d at 33. The Court will also infer that Plaintiff, in his duties of "bussing tables; dishwashing; accepting/unloading deliveries; organizing deliveries; sweeping/mopping; and cleaning the restaurant[,]" handled goods that were moved in interstate commerce. Compl. ¶ 27; see Galicia, 2015 WL 1469279. These allegations, accepted as true, sufficiently demonstrate engagement in interstate commerce.

### c.    Defendants' Status As Employers

Under the FLSA, the definition of "employer" is liberally construed beyond common law principles of agency. See Irizarry v. Catsimatidis, 722 F.3d 99, 103 (2d Cir. 2013). The Second Circuit looks to the "economic reality" of the relationship between the plaintiff and the

defendant, based on the totality of the circumstances.  Id. at 104.  In order to determine the status of a putative employer, courts examine "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008) (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  The lack of one factor "is not fatal" to a plaintiff's claims, as the economic reality test is based on the totality of the circumstances.  Fermin, 93 F. Supp. 3d at 36.

An individual defendant may also be an "employer" for the purposes of the FLSA if the individual "was engaged in the culpable company's affairs to a degree that it is logical to find him liable to the plaintiff employees[.]"  Irizarry, 722 F.3d at 117 (affirming the liability of an individual defendant based on his "active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees," and his "almost daily" visits to some of his grocery stores).  In order to determine whether an individual defendant is an "employer" under the FLSA, courts use the same "economic reality" test as is used for a corporate defendant.  See Fermin, 93 F. Supp. 3d at 35.

The FLSA allows more than one entity or person to be considered an "employer" at once.  See Zheng, 355 F.3d at 66.  Multiple defendants may be "employers" under the FLSA if they each exhibit "formal and functional control" over a plaintiff's employment.  Barfield, 537 F.3d at 148.  The economic reality test for determining one defendant's status as an employer under the FLSA also establishes whether multiple defendants are joint employers.  See Zheng, 355 F.3d at 71; Reyes-Fana v. Moca Grocery NY Corp., No. 21 Civ. 4493 (AMD) (RER), 2022 WL 5428688, at *6 (E.D.N.Y. Aug. 16, 2022), report & recommendation adopted, 2022 WL 4094241

21

(E.D.N.Y. Sept. 7, 2022).  Joint employers are jointly and severally liable for either employer's violations of the FLSA.  See Echevarria v. ABC Corp., No. 21 Civ. 4959 (JS) (ARL), 2023 WL 5880417, at *5 (E.D.N.Y. Sept. 11, 2023), adhered to on reconsideration, 2024 WL 1639934 (E.D.N.Y. Apr. 16, 2024).

Here, the Court finds that Ms. Park and MSK are joint employers under the FLSA.  Ms. Park was a "[p]rincipal" of MSK, and had "operational control" of MSK, throughout the relevant limitations period.  Compl. ¶ 8.  Ms. Park had the power to hire and fire employees, including Plaintiff.  See id.  Ms. Park controlled the terms and conditions of Plaintiff's employment, as she "supervise[d] and control[led] employee work schedules[,]" "determine[d] the rate and method of pay[,]" and "ensure[d] that managers implemented Defendants' employment policies and pay practices[.]"  Id.  Ms. Park also maintained employee records.  See id.  Considering the totality of the circumstances, and accepting Plaintiff's allegations in the complaint as true, Plaintiff has sufficiently established that Ms. Park and MSK are both employers under the FLSA.  As such, they may both be held jointly and severally liable for Plaintiff's claims.

### d.    Plaintiff's Status As An Employee

Generally, if a defendant is a covered employer in an action alleging violations of the FLSA, the plaintiff is a covered employee.  With certain exceptions, the FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).[4]  To determine whether an individual is an employee under the FLSA, courts in the Second Circuit

---

[4]An individual is not an employee under the FLSA if the individual is "employed by a public agency," an immediate family member of an employer "engaged in agriculture," or an individual who "volunteers to perform services for a public agency" or who volunteers for food banks.  29 U.S.C. § 203(e).

apply the same "economic reality" test as the FLSA's "employer" analysis.  See Irizarry, 722 F.3d at 104.

Here, the Court has already found that Defendants may be held jointly and severally liable as employers under the FLSA.  See, supra, Part III.C.1.c.  Plaintiff, as a busboy, does not fall under any exceptions to the FLSA's definition of "employee."  See 29 U.S.C. § 203(e); Compl. ¶¶ 26-27.  The Court finds that Plaintiff is an "employee" as defined by the FLSA.

### e.    Applicability Of FLSA Exemptions

Even if either an employer or employee is engaged in commerce, a plaintiff who falls within the FLSA's "litany of exemptions" may not recover under the statute.  Fermin, 93 F. Supp. 3d at 32 (citation omitted) (noting that a "kitchen helper/food preparer" is not an exempt employee); see 29 U.S.C. § 213(a).  The "burden rests on the employer to prove that a particular employee is exempt from the [FLSA's] requirements."  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).  A defendant in default "fail[s] to sufficiently invoke any exemptions."  Cao v. Wedding in Paris LLC, 727 F. Supp. 3d 239, 275 (E.D.N.Y. 2024).  On a motion for a default judgment, therefore, a court may find that litigants are not exempt employees if they "do not allege any facts that would make them exempt under the FLSA or NYLL."  Id.

Here, the Court does not find that any exemptions apply to Plaintiff.  Plaintiff worked for Defendants as a busboy.  See Compl. ¶¶ 26-27.  "As a busboy, Plaintiff is not exempt from the FLSA's protection."  Rosa v. La Oficina of Queens, Inc., No. 18 Civ. 6915 (FB) (PK), 2023 WL 2745214, at *7 (E.D.N.Y. Mar. 17, 2023), report & recommendation adopted, 2023 WL 2736237 (E.D.N.Y. Mar. 31, 2023); see Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (certifying an FLSA class including, inter alia, "bus-persons").  Moreover, because

Defendants have defaulted in this action, "they have failed to sufficiently invoke any [FLSA] exemptions." Jimenez, 744 F. Supp. 3d at 247.  As such, Plaintiff is a covered employee under the FLSA.

### 2.    Applicability Of The NYLL

"[In order to] plead a NYLL claim, [a plaintiff] must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to any person employed for hire by an employer in any employment." Solis v. Tropical Restaurant Bar Inc., No. 23 Civ. 1707 (ENV) (MMH), 2024 WL 4271234, at *8 (E.D.N.Y. Sept. 19, 2024) (citations & quotation marks omitted).

### a.    Statute Of Limitations

The statute of limitations for NYLL claims is six years.  See N.Y. Lab. L. §§ 198(3), 663(3).  Because this action was filed on October 13, 2022, the presumptive limitations period for Plaintiffs' NYLL claims began October 13, 2016, at the earliest.[5]  See generally ECF No. 1.

_____

[5] Although it does not affect Plaintiff's claims, the Court notes that New York's response to the Covid-19 pandemic extended the limitations period for Plaintiff's NYLL claims.  New York Executive Order 202.8, signed March 20, 2020, tolled "any specific time limit for the commencement, filing, or service of any legal action . . . as prescribed by the procedural laws of this state."  N.Y. Exec. Order 202.8.  This tolling period was extended several times, through several subsequent executive orders, until it ended on November 3, 2020.  See N.Y. Exec. Order 202.67.  Although this tolling period does not affect any limitations periods for federal statutes, see Romero v. Manhattan & Bronx Surface Transit Operating Auth., No. 21 Civ. 491 (LJL), 2022 WL 624451, at *5-6 (S.D.N.Y. Mar. 2, 2022), courts have interpreted these executive orders as a toll, rather than a suspension, of statutes of limitations for New York laws.  See Powell v. Scollard, No. 21 Civ. 1477 (VSB), 2023 WL 5975249, at *3-4 (S.D.N.Y. Sept. 14, 2023); McLaughlin v. Snowlift, Inc., 185 N.Y.S.3d 212, 213-14 (2d Dep't 2023).  As such, the statute of limitations on the NYLL was tolled from March 20, 2020, to November 3, 2020, or 228 days.

Plaintiff worked for Defendants from "[i]n or around August 2020" to "in or around August 2021." Compl. ¶ 26. These dates, even approximated, are well within the NYLL's limitations period. As such, Plaintiff's claims are timely under the NYLL.

### b.    Substantive Coverage Requirements

Coverage for an employee under the NYLL is more expansive than it is under the FLSA. In order to establish liability under the NYLL, a plaintiff must "prove that he was an employee and that [the defendants] were employer[s] as defined by the statue and accompanying regulations." Sanchez, 643 F. Supp. 3d at 368-69 (quoting Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015)). Unlike the FLSA, the NYLL does not have a minimum revenue requirement or necessitate participation in interstate commerce. See Burns v. Scott, 635 F. Supp. 3d 258, 274 (S.D.N.Y. 2022).

Generally, a plaintiff who falls under the FLSA's umbrella will enjoy the NYLL's protections as well. Although the Second Circuit has not definitively ruled on whether the NYLL and the FLSA apply the same tests for an employer or a joint employer, see Irizarry, 722 F.3d at 117; Perez Perez v. Escobar Construction, Inc., 23-1240-cv, 2024 WL 3594325, at *2 n.3 (2d Cir. July 31, 2024) (summary order), the Second Circuit "construe[s] the NYLL definition [of an employee] as the same in substance as the definition in the FLSA." Velarde v. GW GJ, Inc., 914 F.3d 779, 783 (2d Cir. 2019) (quoting Glatt v. Searchlight Pictures, Inc., 811 F.3d 528, 534 (2d Cir. 2016)). District courts in the Second Circuit have held that the "NYLL's definition of [an] employer is . . . nearly identical to that of the FLSA, and the analysis of the employment relationship is based on the same factors." Cao, 727 F. Supp. 3d at 275 (citations & quotation marks omitted); see Zabrodin, 702 F. Supp. 3d at 117. In order to determine joint and several liability for multiple defendants, courts apply the same standard to FLSA and NYLL claims. See

25

Echevarria, 2023 WL 5880417, at *5; Khan v. Nyrene, Inc., No. 18 Civ. 557 (ARR) (ST), 2020

WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), report & recommendation adopted, 2020 WL

1929066 (E.D.N.Y. Apr. 21, 2020); Fermin, 93 F. Supp. 3d at 37.  "Generally, where liability is

found under the FLSA, it is also found under the NYLL."  Palaghita v. Alkor Capital Corp., No.

19 Civ. 154 (ARR) (RER), 2021 WL 4464121, at *8 (E.D.N.Y. Aug. 20, 2021), report &

recommendation adopted, 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021).

Here, the Court already established that Defendants were jointly and severally liable as

employers under the FLSA, and that Plaintiff was a non-exempt employee.  See, supra, Part

III.C.1.  For these same reasons, Plaintiff is an employee, and Defendants are employers, under

the NYLL.  Plaintiff is therefore entitled to the NYLL's protections.

### 3.    Defendants' Particular Wage-and-hour Violations

Because the FLSA limitations period falls within the NYLL limitations period, and

because a covered employee under the FLSA is also protected by the NYLL, there is significant

overlap in liability among the FLSA and the NYLL.  Where there is overlap, the Court will

examine Defendants' potential liability under the FLSA and the NYLL together.  In making

these assessments, the Court relies on the complaint.

### a.    Overtime Violations

The FLSA requires an employee to "be compensated at a rate of no less than one and

one-half times the regular rate of pay for any hours worked in excess of forty per week[.]"

Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013); see

29 U.S.C. § 207(a).  New York regulations also require employers to "pay an employee for

overtime at a wage rate of one and one-half times the employee's regular rate in the manner and

methods provided in and subject to the exemptions of" the FLSA.  N.Y. Comp. Codes R. &

Regs. tit. 12 § 142-2.2.  With certain exceptions, the NYLL characterizes a "legal day's work" as eight hours.  N.Y. Lab. L. § 160.

In order to establish "a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013); see Fermin, 93 F. Supp. 3d at 44 (noting that the pleading requirements for an overtime claim "appl[y] in the context of the NYLL as well").  Under the NYLL, similar calculations are to be made.  "Absent statutory exceptions, a flat sum compensation generally violates the overtime requirements of the FLSA and the NYLL when an employee works in excess of 40 hours per week without additional hourly compensation."  Sanchez, 643 F. Supp. 3d at 370.

On a motion for default judgment, the bar to establish a plaintiff's hours worked is low. When a defendant has defaulted, "the court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate."  Jimenez, 744 F. Supp. 3d at 249 (noting that "it would be unfair to require more substantial proof of improper compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery").   Nevertheless, a plaintiff must "provide sufficient detail about the length and frequency of [the] unpaid work to support a reasonable inference that [the plaintiff] worked more than forty hours in a given week."  Nakahata, 723 F.3d at 201.

Although a court may assume the accuracy of an employee's estimated hours worked, the court still must independently determine whether, based on these estimates, a defendant is liable for overtime violations.  The court must examine whether, based on the plaintiff's well-pleaded factual allegations, the plaintiff received any bona fide breaks, such as meal breaks.  A bona fide meal period is not compensable under either the FLSA or the NYLL.  See Tambriz, 577 F. Supp.

27

3d at 325 (citations omitted); <u>Villanueva v. 179 Third Avenue Rest. Inc.</u>, 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), <u>report & recommendation adopted</u>, 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

In the Second Circuit, a meal break is not <u>bona</u> <u>fide</u> if "the employee is required to be on-call to handle whatever work arises during the [meal] break." <u>Herrera v. Comme des Garcons, Ltd.</u>, 84 F.4th 110, 116 (2d Cir. 2023); <u>see</u> <u>Shanfa Li v. Chinatown Take-Out Inc.</u>, 812 F. App'x 49, 52 (2d Cir. 2020) (summary order) (affirming the district court's finding that a meal break was not <u>bona</u> <u>fide</u> because the plaintiffs only "spent about twenty minutes eating meals, during which time they could be required to stop eating if a task needed completion"). If an employer grants time for meal breaks but "interrupt[s] or shorten[s] them," that break time is therefore compensable as hours worked. <u>Jesus v. Gotham Cleaners Inc.</u>, No. 23 Civ. 4783 (PAE) (SLC), 2024 WL 4264906, at *7 (S.D.N.Y. Aug. 1, 2014) <u>report & recommendation adopted</u>, 2024 WL 4891890 (S.D.N.Y. Nov. 26, 2024) (quoting <u>Villanueva</u>, 500 F. Supp. 3d at 235).

Here, Plaintiff worked six days per week, twelve hours per day, from 10:30 A.M. to 10:30 P.M. <u>See</u> Compl. ¶ 28. Although Plaintiff was purportedly given a one-hour meal break each day, this break was interrupted, and Plaintiff was "required to work through his meal breaks on a daily basis." <u>Id.</u> ¶ 31. As Plaintiff alleges he was unable to take a break for at least 30 minutes without interruption, the Court finds that Plaintiff has alleged that he did not receive a <u>bona</u> <u>fide</u> meal break each day, making all twelve hours Plaintiff worked each day compensable. Therefore, Plaintiff worked 72 hours per week. <u>See</u> <u>id.</u> ¶ 28.

Plaintiff sufficiently established that he was not compensated at time-and-a-half for any hours above forty hours that he worked. Plaintiff was paid at a "fixed salary" each week, "regardless of how many hours he worked each workweek." <u>Id.</u> ¶ 29. Throughout Plaintiff's

employment, "there was never any agreement that Plaintiff's fixed weekly salary was intended to cover the overtime hours in excess of forty (40) that he worked." Id. Furthermore, "Plaintiff was not paid [any] overtime premium[s] for hours worked more than forty (40) hours per week." Id. ¶ 30.

The Court therefore respectfully recommends that Defendants be found liable to Plaintiff for overtime violations under the FLSA and the NYLL.

### b.    Spread-of-hours Violations

New York Labor Law entitles employees who earn the minimum wage or less to earn an additional hour of pay, at the minimum wage, for each day where the employee works more than ten hours. See N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4. Typically, an employee is not entitled to this spread-of-hours premium if the employee's hourly rate is greater than the minimum wage. See Fermin, 93 F. Supp. 3d at 45-46 (citations omitted); Jimenez, 744 F. Supp. 3d at 249-50 (collecting cases). Pursuant to New York's Hospitality Industry Wage Order, employees who work "in restaurants and all-year hotels" entitled to spread-of-hours pay, "regardless of a given employee's regular rate of pay." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(d).

The Court finds that Plaintiff is entitled to spread-of-hours pay. As a busboy at a restaurant, the Hospitality Industry Wage Order applies to Plaintiff. See Chavez, 2024 WL 4244087, at *8 (citing Rowe v. CC Restaurant & Bakery, Inc., No. 17 Civ. 1423 (CBA) (PK), 2019 WL 4395158, at *8 (E.D.N.Y. Aug. 15, 2019), report & recommendation adopted, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019)). While working for Defendants, Plaintiff worked twelve hours per day. See Compl. ¶ 28. Although Plaintiff worked for more than ten hours per day, he never received any spread-of-hours premiums. See id. ¶ 33.

As such, the Court respectfully recommends that Defendants be found liable to Plaintiff for spread-of-hours violations under the NYLL.

### c.      Withholding Tips

Both the FLSA and the NYLL contain provisions prohibiting employers from keeping tips that employees earn.  Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  29 U.S.C. § 203(m)(2)(B).  Under the NYLL, "[n]o employer or his agent . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. Lab. L. § 196-d.  A busboy is allowed to receive a share of tips under this statute.  See id.; Zabrodin, 702 F. Supp 3d at 120.  "The test for whether an individual is an 'employer' forbidden from keeping employee's tips under the FLSA and NYLL is the same as the one used to assess individual liability" under the FLSA.  Managhas v. Eight Oranges Inc., No. 22 Civ. 4150 (LJL), 2024 WL 4555669, at *18 (S.D.N.Y. Oct. 22, 2024).

Although Plaintiff does not allege that he was subject to any tip credit, he does allege that Defendants "would take all tips that customers gave."  Compl. ¶ 32.  As a busboy, Plaintiff was permitted to receive a share of tips received by employees.  See Zabrodin, 702 F. Supp 3d at 120.  Plaintiff implies that he was entitled to a portion of these tips.  See Compl. ¶ 32.  Furthermore, as Defendants are considered employers under both the FLSA and the NYLL, see, supra, Parts III.C.1.c., III.C.2.b.,  Defendants were not permitted to withhold or keep any tips.

As such, the Court respectfully recommends that Defendants be found liable to Plaintiff for unlawfully withholding tips under the FLSA and the NYLL.

### d.    Time-shaving Violations

Plaintiff alleges in his complaint that Defendants violated the FLSA and the NYLL by failing to pay Plaintiff "unpaid wages, including overtime, due to time shaving[.]"  Compl. ¶¶ 1-2, 51, 61; see id. ¶¶ 31, 36, 46, 56.  Plaintiff does not make this claim in his declaration or his memorandum of law in support of his default judgment motion.  See Pls.' Mem. L.; Borja Decl.  Although Plaintiff's counsel declares that "Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff his proper overtime due to a fixed salary and timeshaving[,]" see Lee Aff. ¶ 14,  Plaintiff does not include time-shaving damages in his proposed damages sheet.  See Lee Aff. Ex. E.  The Court finds that Plaintiff abandoned his time-shaving claims.  See Zabrodin, 702 F. Supp. 3d at 121.

As such, the Court respectfully recommends that Plaintiff's motion for default judgment be denied as to Plaintiff's claim for unlawful time-shaving, and that the claim be dismissed with prejudice.

### e.    Failure To Provide Wages Notices And Wage Statements

The NYLL requires each employer to "provide his or her employees . . . at the time of hiring, a notice containing" information about, inter alia, the employee's wages, including the rate of pay, allowances claimed, the employer's name and aliases, and the employee's regular pay day.  N.Y. Lab. L. § 195(1)(a).  Once the employee is hired, the employer must provide a wage statement "with every payment of wages," listing, inter alia, the name of the employer, the rate of pay, gross wages, applicable deductions and allowances, and net wages.  N.Y. Lab. L. § 195(3).  The NYLL provides for statutory damages for violations of this law.  See N.Y. Lab. L. §§ 198(1-b), 198(1-d).

An employer's failure to pay wage notices does not automatically entitle the employee to statutory damages. A federal court does not have jurisdiction to hear a claim in which the plaintiff lacks standing to sue. See Spokeo, Inc. v. Robins, 578 U.S. 330, 337-38 (2016) ("The doctrine [of standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."). "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021). A plaintiff must prove standing to sue for each claim asserted. See id. at 431. Even when faced with an explicit statutory right, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. at 427.

The Second Circuit has held that in order to sustain a claim for wage-notice and wage-statement violations in federal court, "a plaintiff must adequately allege a concrete injury-in-fact resulting from the failure to provide the wage notices and wage statements[.]" Guthrie v. Rainbow Fencing Inc., 113 F.4th 300, 302-03 (2d Cir. 2024). In order to allege this concrete injury, the "plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." Id. at 308 (noting that such a connection is not present "unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided"). Otherwise, NYLL wage-notice and wage-statements claims must be dismissed for lack of standing. See id. at 311.

Here, the Court finds that Plaintiff failed to plead a concrete injury stemming from Defendants' failures to provide wage notices and wage statements. Plaintiff alleges that he never received a wage-and-hour notice from Defendants "at the date of hiring and annually thereafter,"

and that he never received a wage statement. See Compl. ¶¶ 34-35. Plaintiff does not allege that he suffered any "concrete harm" because of Defendants' unlawful conduct. TransUnion, 594 U.S. at 417. Plaintiff does not say that Defendants' failure to provide wage notices and wage statements prevented him from effectively advocating for better wages, that he suspected any discrepancy between the wages to which he was entitled and the wages he received, or that Plaintiff suffered adverse consequences because he did not receive information about his wages. See generally Compl.

The Court therefore respectfully recommends that Plaintiffs' motion for default judgment be denied without prejudice as to Plaintiff's claims for failure to provide wage notices and wage statements for lack of standing, and that the claims be dismissed without prejudice.

### D.    Damages

Before entering a default judgment, the court "must find a basis for the damages specified in the default judgment." Zabrodin, 702 F. Supp. 3d at 113. The court has an "obligation to ensure that the damages [are] appropriate." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). "Even when a default judgment is warranted based on a party's failure to defend [an action], the allegations in the complaint with respect to the amount of damages are not deemed true." Credit Lyonnais, 183 F.3d at 155.

In order to determine damages, the court may "presume the accuracy of [plaintiffs'] recollection and estimates of hours worked set forth in their affidavits and damages calculations." Cao, 727 F. Supp. 3d at 296. Because, under the FLSA, the employer bears the burden to track the hours an employee works, "[a] plaintiff need not compute FLSA damages with precision." Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19, 20 (2d Cir. 2002)

(summary order). "However, it remains the plaintiffs' burden to prove damages to a 'reasonable certainty.'" Lopez v. Yossi's Heimishe Bakery Inc., No. 13 Civ. 5050 (FB) (CLP), 2015 WL 1469619, at *9 (E.D.N.Y. Mar. 30, 2015) (quoting Credit Lyonnais, 183 F.3d at 155). In order to establish this reasonable certainty, the court must "determin[e] the proper rule for calculating damages . . . and assess[] [the] plaintiff's evidence supporting the damages to be determined under this rule." Credit Lyonnais, 183 F.3d at 155.

"Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Gunawan, 897 F. Supp. 2d at 83. Nevertheless, a court may deny a default judgment motion if "[t]he record evidence does not provide a sufficient basis for determining a damages award." Singh v. Mowla, No. 19 Civ. 4687 (PKC) (LB), 2022 WL 17820099, at *11 (E.D.N.Y. Sept. 30, 2022) (finding that the record "does not even provide enough evidence to establish the number of hours that plaintiffs worked each week," rendering the court unable to "determine [the plaintiffs'] hourly rate of pay"). A court may also decline to award damages in a default judgment motion if the plaintiff cannot prove damages to a reasonable certainty, "even where liability has been established[.]" HTV Indus., Inc. v. Agarwal, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018).

Here, even though Plaintiff has established Defendants' liability as to most of his claims, the Court is unable to determine with reasonable certainty the proper amount of damages to award. Both the complaint and Plaintiff's declaration fail to give specific time periods as to the beginning and end of Plaintiff's employment and Plaintiff's change in weekly wages. Instead, Plaintiff describes his damages in general statements such as "in or around," or "sometime in" a given month for these significant changes in the terms and conditions in Plaintiff's employment. See Borja Decl. ¶¶ 3, 6; Compl. ¶¶ 26, 29. These ambiguities in Plaintiff's declaration and

allegations have significant implications for when Defendants' liability begins and ends, and exactly how much money Plaintiff is owed in overtime premiums and spread-of-hours damages.[6]

Based on Plaintiff's declaration and the complaint, the Court is also unable to determine Plaintiff's damages for withheld tips. Plaintiff declares that he "should have earned approximately $150.00 to $200.00 in tips every day." Borja Decl. ¶ 8; see Compl. ¶ 32. This range does not indicate whether Plaintiff's daily damages were on the higher or the lower end of the range given, or his damages in tips for particularly busy or slow days. In addition, Plaintiff's basis for his tip estimated damages, namely, "the volume of Defendants' business, (ii) the amounts of credit card tips and cash tips [Plaintiff] saw being left at tables that [he] cleaned up, and (iii) discussions with other employees regarding the amounts of tips that guests had left[,]" is very sparse. Borja Decl. ¶ 8. Although the Court accepts Plaintiff's tip-related allegations in the complaint as true, see Compl. ¶ 32, Plaintiff does not provide any facts supporting a calculation of over $150 per day in damages in withheld tips. This factual basis is of particular importance, given that Plaintiff worked for Defendants during the Covid-19 pandemic, when restaurants faced significant restrictions on dining capacity. See, e.g., N.Y. Exec. Order 202.48; N.Y. Exec. Order 202.61; N.Y. Exec. Order 202.81; N.Y. Exec. Order 202.93; N.Y. Exec. Order 202.96. Given that Plaintiff is proposing significant damages in tips for working as a busboy during the Covid-19 pandemic, it is necessary for Plaintiff to provide sufficient evidence for the Court to determine with reasonable certainty the amount of tips owing to Plaintiff alone, and not just to the tip pool generally.

---

[6] Plaintiff's statement of damages approximates dates for when these changes in Plaintiff's employment occurred, but Plaintiff does not offer an explanation as to why any given dates in the damages calculation were selected. See Lee Aff. Ex. E. As such, the Court cannot base a damages calculation against the amounts listed in this statement.

Based on Plaintiff's approximated and general allegations, Plaintiff has sufficiently established Defendants' liability for overtime violations, spread-of-hours violations and withheld tips. See, supra, Part III.C.3. Nevertheless, because the Court cannot calculate damages to a reasonable certainty based on Plaintiff's submissions, the Court respectfully recommends denying the damages portion of this motion without prejudice. Should the District Court adopt this report and recommendation, the Court respectfully recommends that Plaintiff be given leave to file a new motion for damages consistent with this report within 30 days of its adoption, if it is adopted. Any updated statement of damages should be sworn or affirmed to by Plaintiff or other persons with personal knowledge of Plaintiff's damages, and should include a week-by-week approximation of Plaintiff's hours worked and weekly wages, the tips earned, and the factual basis supporting this allocation of tips. If the District Court refers the damages motion to the undersigned, Plaintiff's counsel must email a "live" spreadsheet of their damages calculation to scanlon_chambers@nyed.uscourts.gov.

## IV.    CONCLUSION

For the reasons stated above, the undersigned respectfully recommends that Plaintiff's motion for default judgment as to liability be granted in part, denied in part with prejudice and denied in part without prejudice, and that the motion be denied without prejudice as to damages.

First, the undersigned respectfully recommends that Defendants be found liable to Plaintiff for overtime violations under the FLSA and the NYLL, for withheld tips under the FLSA and the NYLL, and for spread-of-hours violations under the NYLL. Second, the undersigned respectfully recommends that Plaintiff's motion as to the time-shaving claim be denied and that the claim be deemed abandoned and dismissed with prejudice, and that Plaintiff's motion as to the wage-notice and wage-statements claims be denied without prejudice,

and that the claims be dismissed without prejudice for lack of standing.  Third, the undersigned

respectfully recommends that Plaintiff's motion for default judgment as to damages be denied

without prejudice, and that Plaintiff be permitted to file a motion for default judgment as to

damages and attorneys' fees and costs only, consistent with this report and recommendation,

within 30 days of the adoption of this report and recommendation, should it be adopted.

## V.    OBJECTIONS

This report and recommendation will be filed electronically.  Any written objections to this

report and recommendation must be filed with the Clerk of the Court within fourteen (14) days

of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any request for

an extension of time for filing objections must be directed to the District Judge prior to the

expiration of the fourteen-day objection period.  Failure to timely file objections will preclude

further review of this report and recommendation either by the District Court or the Court of

Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022).

The Court will mail this report and recommendation to Defendant Keum Soon Park at 5320

201st Street PH, Oakland Gardens, New York 11364, and Defendant MSK Restaurant Corp.

d/b/a Yangsando at 165-19 Northern Boulevard, Flushing, New York 11358.

Dated: Brooklyn, New York
         March 13, 2025

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge